AKSANA M. COONE (SBN 190125)
aksana@coonelaw.com
**LAW OFFICES OF AKSANA M. COONE**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9650
Fax: (310) 954-9008

GLENN J. HOLZBERG (Fla. Bar No.: 369551)
glenn@holzberglegal.com
**HOLZBERG LEGAL**
7685 SW 104th Street
Suite 220
Miami, Florida 33156
PHONE: (305) 668-6410
FAX: (305) 667-6161

*Pro Hac Vice to be Filed*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI INGRAHAM and GREGORY RIOUX, | Case No.: 2:21-cv-1916 |
| Plaintiffs, | **PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| PRINCESS CRUISE LINES, LTD., | |
| Defendant. | Complaint filed: March 1, 2021<br>District Judge:<br>Magistrate Judge: |

## PLAINTIFFS' COMPLAINT
## <u>AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, VICKI INGRAHAM and GREGORY RIOUX, bring this action against Defendant PRINCESS CRUISE LINES, LTD., a for profit corporation,

1    for personal injuries sustained. Plaintiffs, VICKI INGRAHAM and GREGORY

2    RIOUX, seek damages and demand a jury trial on all issues so triable against

3    Defendant PRINCESS CRUISE LINES, LTD., and for good cause alleges:

4                    **THE PARTIES AND JURISDICTION**

5        1.    Plaintiff, VICKI INGRAHAM, is sui juris, is a resident of North

6    Carolina and citizen of the United States.

7        2.    Plaintiff, GREGORY RIOUX, is sui juris, is a resident of North

8    Carolina and citizen of the United States.

9        3.    At all times material, Defendant PRINCESS CRUISE LINES,

10   LTD., ("PRINCESS") is incorporated in Bermuda, with its worldwide

11   headquarters, principal address and principal place of business located in the

12   County of Los Angeles, California.

13       4.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 for

14   the reason that there is complete diversity of citizenship between Plaintiffs and

15   PRINCESS, and Plaintiffs seek damages in excess of the required amount of

16   $75,000 exclusive of interest, costs.  This Court also has Admiralty subject

17   matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime

18   tort.

19       5.    This action is being pursued in this Court, as opposed to state court

20   as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333,

21   because Defendant PRINCESS unilaterally inserts a forum selection clause into

22   its cruise tickets that requires its passengers to file cruise-related suits only in this

23   federal district and division, as opposed to any other place in the world.

24       6.    Defendant PRINCESS, at all times material hereto, personally or

25   through an agent:

26           a.    Operated, conducted, engaged in or carried on a business

27                 venture in this state and/or county or had an office or agency

28                 in this state and/or county;

2

b.     Was engaged in substantial activity within this state;

c.     Operated vessels in the waters of this state;

d.     Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

e.     The acts of the Defendant PRINCESS set out in this Amended Complaint occurred in whole or in part in this state and/or county;

f.     The cruise line ticket for the Plaintiffs requires that suit be brought in this Court against the named Defendant PRINCESS in this action.

7.     At all times material, Defendant PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Los Angeles, California, San Francisco, California, and Sydney, Australia.

8.     At all times material, Defendant PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Los Angeles, California, San Francisco, California, and Sydney, Australia.

9.     At all times material, Defendant PRINCESS operated, managed, maintained, supervised, chartered, and/or controlled a large commercial vessel named *Coral Princess* ("the subject vessel").

10.     At all times material, Defendant PRINCESS transported fare-paying passengers, including the Plaintiffs, on cruises aboard its vessel *Coral Princess*.

11.     This action is an action under general maritime law and the laws of California, as applicable.

/ / /

## **GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

12.    This lawsuit involves Defendant's knowing and intentional decision to proceed with the *Coral Princess* a cruise sailing out of San Antonio, Chile on March 5, 2020, in which Defendant subjected the passengers on board, including the Plaintiffs, to the highly contagious coronavirus placing them in actual risk of immediate physical injury and death.

13.    As a result of the Defendant's negligence, Plaintiff VICKI INGRAHAM contracted COVID-19 while aboard the *Coral Princess*. Plaintiffs VICKI INGRAHAM and GREGORY RIOUX suffered actual physical injuries, experienced the symptoms of COVID-19, and required significant medical care. Plaintiffs VICKI INGRAHAM and GREGORY RIOUX feared for their own lives as well as the lives of each other.

14.    Plaintiffs VICKI INGRAHAM and GREGORY RIOUX were supposed to disembark the vessel *Coral Princess* on March 19, 2020 in Argentina. However, the passengers were not all permitted to disembark the vessel, including Plaintiffs. Some passengers who previously disembarked were required to reenter the vessel after being permitted to go into port.

15.    Prior to disembarking the vessel, on March 21, 2020, Plaintiff VICKI INGRAHAM first began exhibiting symptoms of COVID-19. On March 23, 2020, and despite her symptoms Plaintiff, VICKI INGRAHAM, was refused assistance at the Medical Center because the Medical Center was overwhelmed. Furthermore, Plaintiff VICKI INGRAHAM was advised that the Medical Center did not have sufficient supplies and medical equipment to treat her.

16.    On March 30, 2020, Plaintiff VICKI INGRAHAM was finally treated by the medical center, which was again overwhelmed. Plaintiff VICKI INGRAHAM was struggling to breath and suffering from a violent cough. Plaintiff VICKI INGRAHAM was tested for the flu, which was negative.

Plaintiff VICKI INGRAHAM was diagnosed with pneumonia and placed on oxygen.

17.    Plaintiff VICKI INGRAHAM was tested for COVID-19 on April 1, 2020. At this time the vessel was docked in Barbados. On April 2, 2020, Plaintiff VICKI INGRAHAM received her positive test results for COVID-19.

18.    Plaintiffs VICKI INGRAHAM and GREGORY RIOUX, without being given any proper personal protective equipment were gathered in a meeting led by the ship's Doctor to announce the results of the positive tests.

19.    Plaintiff GREGORY RIOUX was knowingly exposed, at this meeting, by the *Coral Princess* Medical Staff to COVID-19 as 12 people in this group were given positive test results.

20.    Plaintiff GREGORY RIOUX has preexisting respiratory issues including Asthma and COPD. He also requires the assistance of a pacemaker for his preexisting heart condition.

21.    Thereafter, on April 3, 2020, Plaintiff VICKI INGRAHAM was placed into isolation after previously subjecting Plaintiff, GREGORY RIOUX, was exposed to COVID-19.

22.    As a result of the Defendant's negligence Plaintiff VICKI INGRAHAM contracted COVID-19. On April 5, 2020, she was disembarked, at Port of Miami, on an emergency basis, from the *Coral Princess*, to Jackson Memorial Hospital. Plaintiff VICKI INGRAHAM spent 4 days in the hospital. Plaintiff VICKI INGRAHAM was given hydroxychloroquine, which has been reported by the FDA to cause "serious heart rhythm problems and other safety issues, including blood and lymph system disorders, kidney injuries, and liver problems and failure."[1]

---

[1] https://www.fda.gov/drugs/drug-safety-and-availability/fda-cautions-against-use-hydroxychloroquine-or-chloroquine-covid-19-outside-hospital-setting-or

PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL    Case No.: 2:21-cv-1916

23.     Plaintiff VICKI INGRAHAM suffered cough, fatigue, cough, shortness of breath, chest pains, and loss of taste and smell. Plaintiff VICKI INGRAHAM continued to struggle with symptoms of COVID-19 for several months after her initial diagnosis. She continues to treat for the potential permanent damage to her lungs and loss of stamina as a result of contracting COVID-19.

**Factual Allegations Surrounding the Cruise Industry and the Coronavirus**

24.     In the recent months, there has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and North America.

25.     The dangerous conditions associated with COVID-19 include its manifestations – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[2] – and/or its symptoms – fever, dry cough, and/or shortness of breath[3] – as well as the high fatality rate associated with contracting the virus.[4] The dangerous conditions associated with COVID-19 also include its extreme contagiousness. For example, a person with COVID-19 infects, on average, another 2.5 people, and COVID-19 is therefore more contagious than Ebola or Influenza.[5]

---

[2] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order,* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[3] *See* Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[4] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

[5] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

PLAINTIFFS' COMPLAINT AND DEMAND FOR
JURY TRIAL                                Case No.: 2:21-cv-1916

26.     Outlined below is a timeline of events relevant to this lawsuit against Defendant. This timeline supports Defendant having actual knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19 at the time the Plaintiffs contracted COVID-19:

a.     <u>December 31, 2019</u> – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of pneumonia with an unknown cause.

b.     <u>January 5-7, 2020</u> – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

c.     <u>January 11, 2020</u> – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

d.     <u>January 20, 2020</u> – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases within China.

e.     January 23, 2020 – Chinese authorities take the unprecedented measure of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

f.     January 24, 2020 – The United States Coast Guard issued a Maritime Safety Information Bulletin (MSIB) on January 24, 2020, the entitled *Novel Coronavirus Precautions*, directed to all vessel owner and operators[6]. The MSIB alerted shipowners and operators of the outbreak, provided guidance and mandated that they report sick or deceased crew/passengers to the Center for Disease Control (hereinafter the "CDC").

g.     January 24, 2020 – the Department of Transportation Maritime Administration (*hereinafter* "MARAD") issued a Maritime Security Communication with Industry (hereinafter "MSCI") advisory entitled *2020-002A-Global-Novel Coronavirus Outbreak*.[7]

h.     January 30, 2020 – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.[8]

---

[6] *See,* https://www.maritimedelriv.com/storage/app/media/Agencies/USCG/USCG_MSIB/USHQ_MSIB_01_20_MTS_Precautions.pdf

[7] *See,* https://www.maritime.dot.gov/content/2020-002a-global-novel-coronavirus-outbreak

[8] Ryan Goodman and Danielle Schulkin, *Timeline of the Coronavirus Pandemic and U.S. Response*, Just Security, April 13, 2020, https://www.justsecurity.org/69650/timeline-of-the-coronavirus-pandemic-and-u-s-response/.

i.  January 31, 2020 – MARAD issued another MSCI advisory entitled *2020-0004-Global-Novel Coronavirus Outbreak*[9] again alerting shipowners and operators, such as the Defendant PRINCESS, to coronavirus outbreak *and* reporting requirements to the CDC. MARAD issued a follow-up MSCI advisory on February 8, 2020 entitled *2020-0005-Global-Novel Coronavirus Outbreak*.[10]

j.  February 2, 2020 – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from the SARS outbreak in the early 2000s (349).

k.  February 3, 2020 – The United States Declares a Public Health Emergency.

l.  February 5, 2020 – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

m.  February 5, 2020 (*Diamond Princess*) – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crewmember tested positive for COVID-19 while aboard the vessel. See *infra* for further details.

n.  On February 13, 2020 – The CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections. See *infra* for further details.

---

[9] *See*, https://www.maritime.dot.gov/content/2020-004-global-novel-coronavirus-outbreak

[10] *See*, https://www.maritime.dot.gov/content/2020-005-global-novel-coronavirus-outbreak

PLAINTIFFS' COMPLAINT AND DEMAND FOR    Case No.: 2:21-cv-1916
JURY TRIAL

o.    February 21, 2020 (*Grand Princess*) – The *Grand Princess* embarks on a voyage despite its cruise operator, PRINCESS, having knowledge that at least one of its passengers from a prior voyage who disembarked the *Grand Princess* on February 21, 2020 had symptoms of COVID-19 while aboard the vessel. See *infra* for further details.

p.    February 19-25, 2020 (*Diamond Princess*) – Following the two-week quarantine aboard the *Diamond Princess*, Japanese officials announced that of the 3,711 passengers aboard the vessel, over 700 tested positive for COVID-19 (18.8%) – the largest cluster of positive COVID-19 cases outside of mainland China at that time. See *infra* for further details.

q.    February 25, 2020 – Dr. Nancy Messonnier, Director of the CDC's National Center for Immunization and Respiratory Diseases announce that the COVID-19 is heading toward pandemic status.

r.    March 8, 2020 – Spain (a country which boarders France to the south) reported 589 COVID-19 cases and 17 COVID-19 related deaths.

s.    March 9, 2020 (*Grand Princess*) – The *Grand Princess* docked in Oakland, California and its passengers were held in quarantine. Of the 3,553 passengers onboard, 21 of the 46 first round of passengers tested for COVID-19 tested positive (45%). Many passengers ultimately refused COVID-19 testing so that they could disembark and travel to the safety of their homes quicker.

t.     March 12, 2020 – Spain reported over 3,000 COVID-19 cases and 84 COVID-19 related deaths.

u.     March 14, 2020 – Spain ordered a nation-wide lockdown, banning all intra-country travel except travel to procure food, medicine and travel related to essential business operations.

27.    The CDC's February 13, 2020, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections aboard ships, like the *Coral Princess*. *See* the Memorandums cited at footnote 2.

28.    Since Dr. Grant Tarling, the Chief Medical Officer of Defendant's parent company Carnival Corporation, stated that Defendant has "deep partnerships with… the U.S. Centers for Disease Control and Prevention,"[11] Defendant knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19, and it's all but certain presence aboard the *Coral Princess* at that time.

29.    This Memorandum provided cruise vessel operators, like Defendant, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of

---

[11] This information was posted on PRINCESS' website in a video regarding Enhanced Boarding Procedures due to COVID-19 on February 29, 2020. *See* Princess Cruise Lines, Ltd., *Enhanced Boarding Procedures and Onboard Preventative Measures*, PRINCESS CRUISE LINES, LTD., February 29, 2020, https://www.princess.com/news/notices_and_advisories/notices/dr-grant-tarling-chief-medical-officer.html (last visited April 22, 2020).

travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to:

  - Postpone travel when sick
  - Watch their health
  - Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4oF / 38oC or higher), begin to feel feverish, or develop other signs or symptoms of sickness
  - Use respiratory, cough, and hand hygiene
    - Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.
    - Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

30.     According to Dr. Martin Cetron, the Director of the CDC's Division of Global Migration and Quarantine, cruise ships have a higher risk of infectious disease spread than arenas, theaters and restaurants.[12]

31.     Defendant and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the *Diamond Princess*, also owned and operated by Defendant, in early February 2020 in Yokohama Harbor. The outbreak began with ten cases,

---

[12] Taylor Dolven, Sarah Blaskey, Nicholas Nehamas, and Alex Harris, *COVID CRUISES: Cruise Ships Sailed on Despite the Coronavirus. Thousands of People Paid the Price*, MIAMI HERALD, Apr. 23, 2020, https://www.miamiherald.com/news/business/tourism-cruises/article241640166.html (last visited April 23, 2020).

1   and rapidly multiplied to seven hundred cases, as a result of the flawed two-week

2   quarantine on the ship.

3       32.   Defendant and the cruise industry got another warning of how

4   severe the virus could spread on cruise ships when the *Grand Princess*, also

5   owned by Defendant, had a breakout in late February 2020 off the coast of

6   California. PRINCESS had knowledge that at least one of its passengers from a

7   prior voyage who disembarked February 21, 2020, had symptoms of coronavirus,

8   and yet it made the conscious decision to proceed with the voyage that began on

9   February 21, 2020, with another three thousand passengers on an infected ship.

10  Prior to boarding the February 21, 2020 voyage on the *Grand Princess*,

11  passengers were simply asked to fill out a piece of paper confirming they were

12  not sick. Not one passenger was questioned, let alone examined in any capacity.

13  As a result of PRINCESS' lackadaisical approach to the safety of passengers and

14  crew, 103 passengers tested positive for the coronavirus and two people have

15  died so far.

16      33.   On February 24, 2020, passengers embarked on the *Ruby Princess*

17  in Sydney, Australia, which for some passengers would be a back-to-back sailing

18  with the Ruby Princess returning to Sydney, Australia on March 8, 2020. On or

19  about February 19, 2020, Defendant became aware of at least one passenger

20  showing symptoms of COVID-19 onboard the Ruby Princess, but Defendant did

21  not take any extra precautions. During the February 24, 2020 voyage on the *Ruby*

22  *Princess*, 158 passengers on board became sick, with 13 registering high

23  temperatures—a known symptom of COVID-19.

24      34.   The Center for Disease Control (CDC) issued a statement on

25  February 18, 2020 that "the rate of new reports of positives new on board [the

26  *Diamond Princess*], especially among those without symptoms, **highlights the**

27  **high burden of infection on the ship and potential for ongoing risk**." Seven

28  of the *Diamond Princess*' passengers died as a result of COVID-19.

35.    Defendant's Chief Medical Officer Dr. Grant Tarling took to the media in late February 2020 to reassure crew and future passengers "we've learned from our recent experiences,' and the measures would in part 'enhance the cruising experience so it continues to be an exceptional and safe way to travel."[13]

36.    On February 29, 2020, in a videotaped message regarding COVID-19, posted on PRINCESS' website and its YouTube page, Dr. Tarling stated "in light of the global spread of coronavirus" Defendant have updated its boarding procedures onboard all its ships, including "temperature checks of all boarding guests," and "conducting thorough passport review and verification ensure guests have not traveled within the past 14 days to countries where there is a travel restriction or health alert due to widespread coronavirus spread."[14] Yet, PRINCESS did not do such for the boarding of the March 5, 2020 *Coral Princess* cruise.

37.    It would only stand to reason, that knowing of these prior traumatic outbreaks on another of its vessels less than a month prior to the subject voyage on the *Coral Princess*, that Defendant PRINCESS would have learned to take all necessary precautions to keep its passengers, crew and the general public safe. This likely would have meant that the voyage, in its entirety, would have been cancelled. Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant PRINCESS set sail.

38.    For this reason and those further stated herein, Plaintiffs VICKI INGRAHAM and GREGORY RIOUX, contracted the coronavirus, were at actual risk of immediate physical injury, suffered from the symptoms and

---

[13] Duncan McNab, *Coronavirus Australia: Explosive Developments in Ruby Princess Cruise Ship Saga*, 7NEWS, April 5, 2020, https://7news.com.au/lifestyle/health-wellbeing/coronavirus-australia-explosive-developments-in-ruby-princess-cruise-ship-saga-c-957325 (last visited April 22, 2020).

[14] Jacquie McNish, Rebecca Smith, Erin Ailworth, and Rachel Pannett, *Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew*, WSJ, May 1, 2020, https://www.wsj.com/articles/cruise-ships-set-sail-knowing-the-deadly-risk-to-passengers-and-crew-11588346502 (last visited May 4, 2020).

1  manifestations of COVID-19, all of which was proximately caused by

2  Defendant's negligence.

**Factual Allegations Surrounding the Coronavirus**
3
**Outbreak on the *Coral Princess* Voyage**
4

5      39.    Approximately two weeks before the *Coral Princess's* scheduled

6  departure on March 5, 2020, Defendant notified passengers with South Korean

7  passports that they would not be allowed on the cruise, due to coronavirus-

8  related travel restrictions imposed by the South Korean government, patently

9  demonstrating Princess' knowledge of the high risks of infection and spread of

10  coronavirus.

11      40.    Before boarding the *Coral Princess*, passengers, including the

12  Plaintiffs, contacted PRINCESS over their concerns of the vessel's safety

13  surrounding the coronavirus. PRINCESS assured passengers, including the

14  Plaintiffs, that its vessel was not affected by the coronavirus, was safe, and that

15  there was no need for concern. In addition, PRINCESS instructed passengers that

16  they would not be reimbursed if they cancelled their March 5, 2020 voyage on

17  the *Coral Princess*.

18      41.    Relying on PRINCESS' assurances, passengers, including the

19  Plaintiffs, embarked on the *Coral Princess* on March 5, 2020 at San Antonio,

20  Chili, and proceeded on a two-week South American Cruise.

21      42.    Prior to boarding passengers, including Plaintiffs, on March 5, 2020,

22  Defendant, PRINCESS did not take any measures to disinfect, sanitize, and/or

23  decontaminate the *Coral Princess.* Plaintiffs boarded the ship without adequately

24  sanitizing the *Coral Princess*, including, but not limited to, incorporating UV

25  lights into the filtration systems and/or antimicrobial sanitizing equipment. In

26  addition, PRINCESS did not have a third-party indoor environmental

27  professional verify that common use areas and surfaces of the vessel were

28  reasonably safe for passengers, including the Plaintiffs, and/or crewmembers.

43.    Prior to boarding on March 5, 2020, Defendant, PRINCESS did not require over 1,500 passengers, including Plaintiffs, and 878 crew members to any additional or enhanced medical or health screening to identify and quarantine passengers who intended to board the *Coral Princess.*

44.    Prior to boarding passengers, including Plaintiffs, on March 5, 2020, Defendant, PRINCESS failed to provide any personal protective equipment to passengers or crew, or implement any safety procedures for passengers socializing, and crew co-mingling during service with passengers on board the *Coral Princess*.

45.    On March 6, 2020, Carnival Cruise Lines, PRINCESS' parent company, announced it would modify cancellation policies, but not in sufficient time to allow passengers, including Plaintiff's to make informed decisions regarding this voyage.

46.    From March 6, 2020 until March 13, 2020, the *Coral Princess* sailed from Chile to the Amalia Glacier, to Ushuaia, Argentina, around Cape Horn, and on March 14, 2020, were sailing toward the coastal city of Puerto Madryn, Argentina. Until March 14, 2020, the cruise proceeded as scheduled.

47.    On March 12, 2020, and during this cruise voyage Defendant, PRINCESS made the decision to suspend all cruises due to COVID-19.[15]

48.    Despite, the "pause" in operations on March 12, 2020, the *Coral Princess* continued sailing during this Global Pandemic, with no warning or notice to passengers, including Plaintiffs.

49.    On March 14, 2020, nine days after departure, passengers on board the *Coral Princess* were advised that they were no longer permitted to leave the vessel at the scheduled Ports of Call.

---

[15] https://www.cnbc.com/2020/03/12/carnivals-princess-cruises-to-pause-global-ship-operations-for-60-days-over-coronavirus.html (last accessed February 4, 2021)

50.     On the evening of March 14, 2020, the Captain by intercom, throughout the *Coral Princess*, advised passengers of a schedule change, notably that the March 15, 2020, to Puerto Madryn was aborted and no shore leave would be granted- no further explanations or warnings were given.

51.     Captain's broadcasts advising passengers of cancelled ports of call became common while the *Coral Princess* remained at sea from March 15, 2020, to March 19, 2020. But onboard the *Coral Princess*, restaurants remained open, activities, including food and beverage service continued as usual, and passengers were allowed to congregate and socialize in crowds, and with crew without any restrictions or safeguards- there was no mention of the coronavirus.

52.     On March 17, 2020, for the first time, passengers were subjected to a temperature check- no other personal protective equipment was provided.

53.     On March 19, 2020, the last day of the scheduled itinerary, the *Coral Princess* arrived in Buenos Aires, Argentina at approximately 1:00 pm. Passengers, including Plaintiffs, were provided conflicting information on the disembarkation procedure. At approximately 4:00 pm the *Coral Princess* began disembarkation- well after the scheduled morning disembarkation. Ultimately, Plaintiffs, VICKI INGRAHAM and GREGORY RIOUX, were unable to disembark and missed their flights back to the United States. Some passengers, who were permitted to disembark, but still missed their flights, were forced to reenter the vessel despite being exposed to each other and the airport in Buenos Aires, Argentina.

54.     Later that same day, on March 19, 2020, passengers on board the *Coral Princess* were informed that due to Argentine Regulations any cruise ships remaining in Port at midnight would be required to stay in port indefinitely; therefore, the *Coral Princes* would be departing immediately and returning to its home port in Fort Lauderdale, Florida.

55. Thereafter, Defendant, PRINCESS began issuing status updates for the *Coral Princess*- as it had previously for the *Diamond Princess* and *Grand Princess*. Over the next few days these reports would track the unsuccessful attempts by the *Coral Princ*ess to disembark passengers in Montevideo, Uruguay, on March 21, 2020, in Rio de Janeiro, Brazil, on March 24, 2020, and in Bridgetown, Barbados, on March 31, 2020, prior to ultimately returning to the United States.

56. On March 31, 2020, Defendant, PRINCESS provided an update stating that the "medical center onboard *Coral Princess* has reported a higher-than-normal number of people presenting influenza-like-symptoms, with no further mention or warning of Coronavirus, despite knowing of its existence and spread on the ship." Simultaneous with this update, the medical staff had submitted thirteen (13) COVID-19 test samples to authorities in Barbados where 12 (7 passengers and 5 crew) of the 13 samples tested positive for COVID-19 including Plaintiff, VICKI INGRAHAM, while flagrantly and recklessly ignoring passengers, including Plaintiffs rights and health.

57. By April 3, 2020, two passengers died on board the *Coral Princess* due to complications from COVID-19.

58. Coast Guard officials denied permission for the *Coral Princess* to land at Fort Lauderdale due to "an unacceptable risk of medical emergency due to the inherent and high probability of transmission of COVID-19 aboard."

59. Passengers were finally allowed to land on April 4, 2020, at Port of Miami in Miami, Florida. Several passengers, including Plaintiff, VICKI INGRAHAM, required immediate medical attention were transported to local hospitals via ambulance. Full disembarkation did not begin until two days later, April 6, 2020.

60. Defendant did not inform passengers, including the Plaintiffs, that were scheduled to board the *Coral Princess* on March 5, 2020, that they were at

a significantly increased risk of exposure to COVID-19. If passengers, including the Plaintiffs, were made aware of this significantly increased risk of exposure prior to boarding the ship Plaintiffs would have never boarded the *Coral Princess*.

61.     Before boarding the *Coral Princess*, PRINCESS failed comply with the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019 by failing to deny boarding to passengers and/or crewmembers who showed symptoms of the coronavirus and/or who had a travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea. Defendant's actions and/or omissions were a direct violation of the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019.

62.     At all times material, during the cruise on the *Coral Princess*, passengers, including the Plaintiffs, were allowed unfettered access to the pools, gym, and buffets, despite knowing passengers on the prior voyage tested positive for COVID-19 and passengers on the March 8, 2020 voyage had symptoms of COVID-19. This further put passengers, including the Plaintiffs at an actual risk of exposure to coronavirus. As a result, Plaintiffs contracted COVID-19 while onboard the *Coral Princess*.

63.     As a result of Defendant's grossly negligent approach to the safety of the passengers on board the *Coral Princess*, and its failure to warn, Plaintiffs contracted COVID-19, experienced the symptoms of COVID-19, and required significant medical care. Both Plaintiffs feared for their own lives and well as the life of each other, all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise.

64.     Defendant is fully aware of the impact this incident has had on passengers, including the Plaintiffs, as PRINCESS' President, Jan Swartz, sent

an email to former passengers that sailed on the March 5, 2020 *Coral Princess* cruise, offering counseling services to former passengers.

65.    As a result of having contracted COVID-19 aboard the *Coral Princess*, the Plaintiffs will continue to suffer and will require medical services in the future. They have and will suffer medical expenses, lost earnings and earning capacity as a result.

66.    Defendant's negligent misconduct was predicated on a profit motive because, simply put, cruise lines like Defendant make no money when passengers do not sail. Defendant's knowing, intentional, conscious and reckless conduct subjects Defendant to the imposition of punitive damages. This voyage set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which PRINCESS' other vessels (*Diamond Princess*, *Grand Princess*, and *Ruby Princess*) had already very publicly faced. This callous disregard for the safety and well-being of its passengers, including the Plaintiffs, must be answered for.

67.    Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to Defendant prior to the time the *Coral Princess* set for sail on the subject voyage. Defendant subjected passengers, including the Plaintiffs, to the highly contagious coronavirus, which the Plaintiffs contracted, exposing them to actual risk of immediate physical injury and death due to its knowing and intentional decision to proceed with a 14-day cruise on March 5, 2020.

**COUNT I**
**NEGLIGENCE AGAINST DEFENDANT**

Plaintiffs hereby incorporate by reference, as though fully set forth herein, paragraphs 1 through 67, and allege as follows:

68.    It was the duty of Defendant to provide Plaintiffs with reasonable care under the circumstances.

69.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

70.    Plaintiffs were injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a.    Failure to use reasonable care to provide and maintain a safe voyage for passengers, including the Plaintiffs, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the coronavirus, and care; and/or

b.    Failure to adequately warn passengers, including the Plaintiffs, before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

c.    Failure to warn passengers, including the Plaintiffs, of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d.    Failure to adequately warn passengers, including the Plaintiffs, before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Coral Princess*; and/or

e.    Failure to adequately warn passengers, including the Plaintiffs, on the subject voyage aboard the *Coral Princess* that a passenger on a prior voyage who showed symptoms of the coronavirus tested positive for the coronavirus before boarding the vessel; and/or

f.    Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

g.     Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

h.     Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

i.     Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

j.     Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

k.     Failure to adequately quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

l.     Failure to adequately quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m.     Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n.     Failure to serve uncontaminated food; and/or

o.     Failing to practice safe and sanitary food practices; and/or

p.     Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Coral Princess*; and/or

q.     Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or

1    should have known that such outbreaks had occurred on prior cruise

2    voyages; and/or

3    r.    Failure to take adequate medical precautions when a passenger is

4    exhibiting symptoms of the coronavirus and/or virus and/or

5    infectious disease so that it can be timely diagnosed; and/or

6    s.    Failure to perform testing on ill passengers to confirm the type and

7    nature of the virus; and/or

8    t.    Failure to have adequate policies and procedures in place to manage

9    and contain the outbreak and spread of the coronavirus and/or virus

10    and/or infectious disease; and/or

11    u.    Failure to provide a sanitary vessel to prevent outbreaks of the

12    coronavirus and/or virus and/or infectious diseases, including, but

13    not limited to, inadequate and/or ineffective cleaning/sanitary

14    procedures and/or lack of equipment and supplies; and/or

15    v.    Failure to take adequate steps to contain the spread of the

16    coronavirus and/or virus and/or infectious diseases, which it knew

17    or should have known could cause other dangerous medical

18    conditions; and/or

19    w.    Knowingly refusing to cancel and/or offer refunds to passengers,

20    including the Plaintiffs, as a result of a passenger on a prior cruise

21    showing symptoms of coronavirus; and/or

22    x.    Failing to have proper policies and procedures in place to determine

23    whether to offer refunds as a result of the risk of exposing

24    passengers and crew to the highly contagious coronavirus due to a

25    passenger on a prior cruise showing symptoms of coronavirus;

26    and/or

27    y.    Failing to cancel the voyage and/or offer refunds despite knowing a

28    passenger on a prior voyage showed symptoms of the coronavirus

1       and despite knowing that multiple prior similarly situated voyages

2       ended in widely publicized catastrophe; and/or

3   z.      Failure to reasonably offer refunds to passengers, including the

4       Plaintiffs, not wishing to travel; and/or

5   aa.     Exposing passengers, including the Plaintiffs, to unsanitary

6       conditions that they were unprepared for without proper warning

7       from Defendant; and/or

8   bb.     Failure to provide adequate training, instruction, and supervision to

9       the Defendant employees; and/or

10  cc.     Failure to promulgate and/or enforce adequate policies and

11      procedures to ensure that safety would not be compromised for cost

12      and/or profits; and/or

13  dd.     Failure to promulgate policies and/or procedures aimed at ensuring

14      an adequate emergency plan to protect the health and welfare of

15      passengers, including the Plaintiffs, during an outbreak of a virus

16      and/or infectious disease, including, but not limited to, the

17      coronavirus; and/or

18  ee.     Failure to determine and/or appreciate the hazards associated with

19      allowing passengers to congregate within close distances, including

20      within six feet, in common areas of the vessel; and/or

21  ff.     Knowing, as a result of previous similar incidents and/or passengers

22      showing symptoms of the coronavirus, of the likelihood of a threat

23      to passenger safety resulting from all of the above, yet failing to

24      take corrective action and/or implement policies and procedures

25      aimed at preventing and/or mitigating the harmful effects of the of

26      the subject incident; and /or

27  gg.     Failure to amend its cancellation policy to allow the passengers,

28      including the Plaintiffs, to cancel their cruise without financial

penalty in light of the significant actual risk due to the coronavirus
global pandemic;

hh.    Other acts or omissions constituting a breach of the duty to use
reasonable care under the circumstances which are revealed through
discovery.

71.    The above acts and/or omissions caused and/or contributed to
Plaintiffs contracting COVID-19 while aboard the *Coral Princess,* exposing
them to medical complications arising from it and possible death, because the
Plaintiffs would not have boarded the vessel knowing of such risks.

72.    In addition, the above acts and/or omissions which caused and/or
contributed to Plaintiffs contracting COVID-19 while aboard the *Coral Princess,*
exposing them to medical complications arising from it and possible death, the
Plaintiffs would have disembarked the vessel in prior to the conclusion of the
sailing knowing that passengers on the subject voyage were showing symptoms
of the coronavirus had Defendant adequately warned and/or communicated the
foregoing to passengers, including the Plaintiffs.

73.    The above acts and/or omissions caused and/or contributed to the
Plaintiffs contracting COVID-19 while aboard the *Coral Princess,* exposing
them to medical complications arising from it and possible death, because the
outbreak would not have occurred but for Defendant's failure to adequately
sanitize the vessel in a reasonably safe condition.

74.    At all material times, Defendant had exclusive custody and control
of the vessel, *Coral Princess*.

75.    Defendant knew of the foregoing conditions causing passengers,
including the Plaintiffs, to contract COVID-19 while aboard the *Coral Princess,*
and did not correct them, or the conditions existed for a sufficient length of time
so that Defendant in the exercise of reasonable care under the circumstances
should have learned of them and corrected them.

76.    As a result of the negligence of Defendant, Plaintiffs were:

a.    exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of contracting and actually contracting COVID-19 while aboard the *Coral Princess*, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.    contracted COVID-19 while aboard the *Coral Princess,* suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c.    feared for their own lives as a result of contracting COVID-19 aboard the *Coral Princess*.

WHEREFORE the Plaintiffs VICKI INGRAHAM and GREGORY RIOUX demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL    Case No.: 2:21-cv-1916

## COUNT II – NEGLIGENT INFLICTION OF
## EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiffs hereby incorporate by reference, as though fully set forth herein, paragraphs 1 through 67, and allege as follows:

77.    At all times material, due to the negligence of the Defendant, Plaintiffs were placed in an immediate risk of physical harm and contracted COVID-19 while aboard the *Coral Princess*.

78.    Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety as a result of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

79.    Plaintiffs were forced to remain on a vessel, for 16 days longer than the scheduled cruise, all the while exposing passengers to coronavirus, without PPE or any reasonable plan or safety measure,  that had multiple passengers and crew that tested positive for coronavirus and were on the vessel for multiple days and were then forced to disembark the vessel in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to and actually contracting COVID-19, causing a reasonable fear of great bodily harm and death. At all times material, the Plaintiffs were placed and kept within the zone of danger, at risk of serious bodily harm, including death due to, inter alia, the highly contagious coronavirus, which had no vaccine.

80.    Plaintiffs were placed within the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers and crew on a prior voyage that tested positive for the coronavirus. Plaintiffs were in close proximity

1    to conditions which did cause or could likely have caused serious physical,

2    mental, emotional injury and/or illness.

3        81.    Plaintiffs fear of death and experience of mental, emotional and/or

4    physical harm was genuine and well founded and Plaintiffs suffered mental or

5    emotional harm (such as fright and anxiety) that was caused by the negligence of

6    Defendant. This fright and anxiety have further manifested itself as multiple

7    physical symptoms experienced by the Plaintiffs, including but not limited to

8    insomnia, depression, anxiety, nightmares, and dizziness.

9        82.    As a result of the negligent inflection of emotional distress by

10   Defendant, Plaintiffs were:

11       a.    exposed to an actual risk of the physical injury, which caused severe

12             mental and emotional anguish, including, but not limited to,

13             anguish, anxiety, fright, horror, suffering, and traumatized by the

14             fear of contracting and actually contracting COVID-19 while aboard

15             the *Coral Princess*, with physical manifestations of that mental and

16             emotional anguish including, but not limited to, sickness, nausea,

17             exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep,

18             nightmares, and respiratory difficulties; and/or

19       b.    contracted COVID-19 while aboard the *Coral Princess,* suffered

20             medical complications arising from it and were injured about their

21             body and extremities, suffered both physical pain and suffering,

22             mental and emotional anguish, loss of enjoyment of life, temporary

23             and/or permanent physical disability, impairment, inconvenience in

24             the normal pursuits and pleasures of life, feelings of economic

25             insecurity, disfigurement, aggravation of any previously existing

26             conditions therefrom, incurred medical expenses in the care and

27             treatment of their injuries including life care, suffered physical

28             handicap, lost wages, income lost in the past, and their working

ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c.     feared for their own lives, as a result of contracting COVID-19 aboard the *Coral Princess*.

WHEREFORE the Plaintiffs VICKI INGRAHAM and GREGORY RIOUX demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs VICKI INGRAHAM and GREGORY RIOUX respectfully request the Court enter judgment in their favor and against the Defendant as follow:

1.     To enter judgment in favor of the Plaintiffs against Defendant on all causes of action as alleged herein;

2.     To award compensatory damages in the amount to be ascertained at trial;

3.     To award punitive damages, as permitted by law;

4.     To award costs of suit, as permitted by law;

5.     For prejudgment interest according to proof; and

6.     To enter such other and further relief as the Court deems just under the circumstances.


DATED: March 1, 2021                      **LAW OFFICES OF**
                                          **AKSANA M. COONE**

                                          BY: *s/ Aksana M. Coone*
                                          Aksana M. Coone, Esq.
                                          Attorneys for Plaintiffs,
                                          *Attorney for Plaintiffs*

1

**HOLZBERG LEGAL**

2

BY: *s/ Glenn J. Holzberg*

3

GLENN J. HOLZBERG

(*Pro Hac Vice to be Filed*)

4

*Attorney for Plaintiffs*

5

6

## DEMAND FOR JURY TRIAL

7

Plaintiffs hereby demand a trial by jury on all claims for relief.

8

9

DATED: March 1, 2021                    **LAW OFFICES OF**
                                                  **AKSANA M. COONE**

10

BY: *s/ Aksana M. Coone*

11

Aksana M. Coone, Esq.

12

Attorneys for Plaintiffs,

*Attorney for Plaintiffs*

13

14

**HOLZBERG LEGAL**

15

BY: *s/ Glenn J. Holzberg*

16

GLENN J. HOLZBERG

17

(*Pro Hac Vice to be Filed*)

*Attorney for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28